CHARLES J. SCHUCK, Judge,
dissenting.
A county board of education is not a state agency as contemplated by the act creating the court of claims, and therefore, the said court has no jurisdiction over a claim prising against such county educational unit or board.
*152 On October 2, 1940, Ernestine Richards, a child of tender years, to-wit, eight years of age, was a pupil in what is known as Klipstino school in Calhoun county, West Virginia. The school building was a one-room country school in which the pupils of all grades were kept and taught in the same room, and which schoolroom was heated by two open-face stoves burning natural gas, and so far as the evidence shows, with no screen or protection of any kind whatsoever encircling or around either of said stoves to protect the children in the said school from injury by fire. During the morning recess period on the said day, the Richards child, in some manner, came in contact with the open flame from one of the said stoves and was terribly burned and scai’red on her back, hips and limbs, so much so that she is permanently injured and made subject to disease which, in the opinion of the medical witness, may have a tendency to shorten her life. Being a child of such tender years, of course no negligence can be imputed to her so far as her acts may be concerned, and this claim, at its very outset presents, to my mind, an intolerable situation which must ultimately be cured by proper and appropriate legislation, as hereinafter referred to.
The board of education of Calhoun county was, in my judgment, negligent in allowing these stoves to be unprotected, especially so in view of the fact that children of tender years were compelled to attend the school under our state law, and were entitled to every protection so far as a safe and secure place for obtaining their early education was concerned. The evidence undoubtedly shows negligence on the part of the board of education of Calhoun county.
The attorney general, through his assistant, moved to dismiss the proceedings against the state board of education, named as one of the respondents, and against the county board of education, on the ground that a state agency was not involved, and, therefore, this court was without jurisdiction in determining the issue or in making an award.
It is true that the state board of education is named as one of the defendants or respondents, but in my opinion, under all *153 the facts and circumstances in this case, was not a party to the infliction of the injuries in question, had no connection whatever, in law or in fact, with the accident, and cannot be considered as an involved agency. The all important question that presents itself, then, is as to whether or not the board of education of the county of Calhoun is such a state agency as is contemplated in the act creating this court.
The act passed March 6, 1941, and duly approved by the Governor, contains, among other provisions, the following:
“Sec. 2.. . . ‘State agency’ means a state department, board, commission, institution, or other administrative agency of the state government.”
Section 13 of the act provides that the jurisdiction of the court, except for claims of a certain nature, shall extend, among other things, to the following matters:
“Claims and demands, liquidated and unliquidated, ex contractu and ex delicto, against the state or any of its agencies which the state as a sovereign commonwealth should in equity and good conscience discharge and pay.”
The jurisdiction ■ of the court is therefore limited, in my opinion, to claims against the state, state agencies, departments or institutions.
It is true that our state constitution provides that the Legislature shall provide by general law for a thorough and efficient system of free schools. We have been endeavoring throughout the years to carry this provision into effect by the establishment of county units in the nature of county boards of education which, by the recent acts of the Legislature, have been given full county-wide powers so far as their prerogatives and functions were concerned, and county-wide control o£ the educational administration affairs of the. county, with a few exceptions, so far as the control of the state board of education is concerned. It is contended by counsel for the claimant that our Supreme Court of Appeals in the case of Krutili v. Board, *154 99 W. Va. 466, had held that a school board is an agent of the state and acts as such when carrying out its duties. A careful reading of the case in question will reveal that this language is but dictum and that the case turned on an entirely different proposition, to-wit, that there was no statutory authority in the sate of West Virginia by which an action could be maintained for negligence or nonfeasance against the county board of education as such, where injuries resulted to a pupil or student in one of its schools by reason of said negligence or non-feasance.
What did the Legislature intend by the use of the language “state agency”? An examination of the authorities shows that as a general proposition, a state agency is one over which the state, as such, through its Governor or other properly elected or appointed officers, has charge and control, and which agency is not subject to the whims or caprices of any individual municipality, county, or locality. State agencies or state institutions have also been defined as those, belonging to, or owned by, or under control of the state and not such as might belong to, or be controlled by, any county units. And this is true, even although the local unit has been established by act of the Legislature and has been the recipient of contributions for its support and assistance from the state.
In Chalfant v. State, 37 Ohio State 60-61, the state of Ohio, in dealing with a similar question, held “state institutions” as set forth in the Ohio constitution, providing that the trustees of benevolent and other state institutions should be appointed by the Governor, meant institutions belonging to and owned by the state, and not to such as might belong to the particular municipalities or counties, although established under the legislative authority of the state, and receiving contributions for their support from the state and governed by state laws.
In Brock v. Bruce, 2 Atlantic 598-606, 58 Vt. 261, it was held: “The constitutional provision requiring every officer, whether judicial, executive, or military, in authority under this state, ... to take and subscribe the oath of office” does not apply to a *155 school district officer — such officers are “in authority under their respective municipalities ” and are not regarded as in authority under the state. If, under this decision school district officers are not officers of the state, and consequently not agents thereof, how can it be maintained that a county educational unit would be an agency or institution of the state?
In State v. Dillon, 2 S. W. 417-419, 90 Mo. 229, it was held that the words “state officer” as used in the Missouri constitution, were to be understood as having been used in their popular sense and refer only to such officers whose official duties are coextensive with the boundaries of the state and not to officers whose functions are confined to counties or townships.
If the matter of state-wide boundaries is to govern us in the instant claim, as held in the Missouri case, then officers who function merely for counties, towns or townships are not state officers, and applying the same reasoning, we must be forced to the conclusion that county units of education, being limited so far as the boundaries are concerned, in carrying out their functions, are not state agencies and therefore, excluded from the jurisdiction of this court by the provisions of the act creating it.
In Massachusetts the Supreme Court held in re opinion of Justices, 46 N. E. 118-119, 167 Mass. 599, which was a proceeding in which the Supreme Court of that state was called upon to render an opinion to determine whether or not a county commissioner was an officer of the commonwealth, and therefore subject to impeachment under the provisions in the Massachusetts constitution, relating to the impeachment of state officers, the court said:
“The office of county commissioner is created by statute and the Legislature can by statute determine in what manner an incumbent may be removed from office. They have some duties or functions which concern the people of the state at large. But it seems to us that they are essentially a local body. They are elected by the people of a county, and their duties re *156 late chiefly 1o the affairs and interests of the county. .. . We have been unable to find any plain intimation by legislatures, courts, or writers of authority, that county commissioners have ever been . . treated as state officers.
If not state officers, then, of course, they cannot be state agencies. And if the board of county commissioners, although subject to much control by the state, cannot be held to be a slate agency, then much less, in my opinion, is a local board of education a state agency and subject to the provisions of the act creating this court.
A strong analogy of statutory construction is found, in my opinion, in the case of Webster v. Board of Education of Raleigh County, 116 W. Va. 395, which held that the workmen’s compensation act does not apply to employees of the county board of education, nor does it give a right of action for injuries received in the course of their employment, occasioned by the negligence of the employer. I think it must be fairly assumed that the court’s decision clearly indicates that a county board of education is not a state agency or department and, therefore, does not come within the general designation of the statute relating to relief under the workmen’s compensation act. If the county board of education is held not to be a state agency in this respect, then it naturally follows that it cannot be held to be a state agency in any other respect, and consequently, does not come within the provisions of the act creating the court of claims.
In the 36 Cyc., page 852, state officers and agents are defined as follows:
“State officers are those whose duties concern the slate at large, or the general public, although exercised within defined limits, and to whom are delegated the exercise of a portion of the sovereign power of the state.
They are in a general sense those whose duties and powers are coextensive with the state, or are not lim *157 ited to any political subdivisions of the state, and are thus destinguished from municipal officers strictly, whose functions relate exclusively to the particular municipality, and from county, city, town, and school district officers.”
I most reluctantly adopt the foregoing view and give the assurance that I had hoped that it could be found that the board of education of Calhoun county was a state agency and could be held liable. It is a claim that should be considered by the Legislature and I would recommend:
First: That if at all possible, an enabling act should be passed by the next Legislature, by reason of which adequate compensation will be given to the claimant and her father for the damages occasioned by her injury, which in turn was occasioned by the negligence of the board of education of Calhoun county;
Second: I further recommend the passage of the necessary legislation that will enable a citizen, a student or pupil to bring an action in tort against any county board of education where injuries and damages are caused by reason of the negligence or nonfeasance of the said board. This legislation, of course, is suggested also in Krutili v. Board of Education, supra.
For the reasons herein set forth, I would be constrained to allow the motion to dismiss.