# CIRCUIT COURT OF FAIRFAX COUNTY

Fairfax County
Board of Supervisors et al.

v.

Zoning Appeals Board
of Fairfax County et al.

December 12, 2006

Case No. (Law) 2004-221391

BY JUDGE STANLEY P. KLEIN

This matter remains before the court on the Board of Zoning Appeals of Fairfax County (FBZA)'s motion to reconsider this court's order granting the Board of Supervisors of Fairfax County and John Wesley White, Director, Fairfax County Department of Public Works and Environmental Services (collectively the County) a voluntary nonsuit. Young K. Lee and Young A. Lee have declined to join in the FBZA's motion. In my letter opinion granting the nonsuit▮ I fully analyzed the arguments and issues raised and do not perceive any reason to revisit them. After serious consideration of all that has transpired in this litigation, I have, however, decided to write once again to express my concern that the FBZA has even filed the instant motion, when its sole involvement in this dispute between the County and the Lees should have been as a neutral tribunal deciding issues in dispute between the actual litigants.

## I. *Background*

In June 2003, the Lees sought a determination by the Fairfax County Zoning Administrator, William Shoup, that property owned by the Lees consisted of three buildable lots. Shoup forwarded the Lees' letter to the Fairfax County Department of Public Works for a response. By letter dated July 25, 2003, Tom S. Nelson, Religious and Community Group Ombudsman of the Fairfax County Department of Public Works, determined that the Lees' property consisted of only one buildable lot and advised the Lees accordingly.

The Lees appealed to the FBZA. At its meeting of January 20, 2004, the FBZA voted to overturn Nelson's determination and concluded that the Lees property did consist of three buildable lots. At the time of the FBZA's January 20, 2004, determination, both the FBZA's by-laws and its staff report in the Lees' case indicated that a "final decision" of the FBZA was to be in writing and prepared by the Clerk of the FBZA. Consistent therewith, on February 11, 2004, the Clerk of the FBZA forwarded a letter stating "[a]t its January 20, 2004, meeting, the Board of Zoning Appeals took action to overturn the Zoning Administrator's determination on the above-referenced matter. The final decision date is February 11, 2004." On March 12, 2004, within thirty days of the FBZA's February 11, 2004, letter, the County filed a Petition for Writ of Certiorari in this court seeking a review of the FBZA ruling. In its petition, the County asserted that the FBZA exceeded its jurisdiction when the FBZA heard and granted the appeal and that the determination of the FBZA was also incorrect as a matter of law. In response to the County's petition, both the FBZA and the Lees filed demurrers, which are now moot, and pleas in bar, alleging that the County's Petition was time-barred.

A full hearing on the County's petition was held on May 3, 2005. However, at the behest of the parties, the court postponed its ruling, pending the decision of the Supreme Court of Virginia in *West Lewinsville Hgts. Ass'n v. Board of Supvrs.*, 270 Va. 259, 618 S.E.2d 311 (2005). After the Supreme Court issued its opinion in *West Lewinsville*, embracing the same argument advanced by the FBZA in support of its plea in bar, the County brought its nonsuit motion, to which Defendants objected. The court granted the nonsuit motion, and the FBZA's motion for reconsideration followed.

## II. *Analysis*

A board of zoning appeals "is a creature of statute possessing only those powers expressly conferred upon it." *Board of Zoning Appeals v. University Sq. Assoc.*, 246 Va. 290, 294, 435 S.E.2d 385, 386 (1992); *Board of Zoning*

*Appeals v. Cedar Knoll, Inc.*, 217 Va. 740, 232 S.E.2d 767 (1977); *Lake George Corp. v. Standing*, 211 Va. 733, 180 S.E.2d 522 (1971). Va. Code § 15.2-2308 mandates that every locality within the Commonwealth enacting a zoning ordinance must establish a board of zoning appeals. Va. Code § 15.2-2309 delineates the various powers and duties of such boards. A board of zoning appeals is expressly authorized to "hear and decide appeals from any order, requirement, decision, or determination made by an administrative officer in the administration or enforcement of [a statute or ordinance relating to zoning]" (§ 15.2-2309(1)); "hear and decide appeals from the decision of the zoning administrator. . . ." (§ 15.2-2309(3)); authorize variances from the terms of a zoning ordinance either on appeal or an original application when special conditions exist (§ 15.2-2309(2)); hear and decide applications for special exceptions as may be authorized in a zoning ordinance and to revoke such special exceptions (§ 15.2-2309(6), (7)); and hear and decide applications for interpretation of district maps (§ 15.2-2309(4)).

Thus, boards of zoning appeals have dual responsibilities, serving both legislative and judicial functions. When deciding whether to grant or deny a special use permit, a board of zoning appeals performs a legislative function. *Board of Supervisors v. McDonalds*, 261 Va. 583, 589, 544 S.E.2d 334, 338 (2001) (internal citations omitted); *National Mem. Park v. Board of Zoning Appeals*, 232 Va. 89, 92 348 S.E. 2d 248, 249 (1986). A board's role would seemingly be no different when considering applications for interpretations of district maps or for variances. *See, e.g., Board of Zoning Appeals v. Fowler*, 201 Va. 942, 946, 114 S.E.2d 753, 756 (1960) (finding that "the very purpose of these boards is, within the confines of the law, to vary specific terms of zoning ordinances to the end that the intent of the zoning law may be effectuated, keeping in mind that the health, safety, morals, and general welfare of the public is the basis for the enactment of such laws"). However, when hearing and deciding appeals from decisions or determinations of administrative officers or zoning administrators, boards of zoning appeals take on entirely different roles. Although boards of zoning appeals are tasked with the responsibility to assure "uniform application and interpretation of specific zoning ordinances ... *see Lamar Co. v. Board of Zoning Appeals*, 270 Va. 540, 547, 620 S.E.2d 753, 757 (2005), and their decisions are presumed to be correct, based in part on their expertise, *National Mem. Park* at 92, 348 S.E.2d at 249, zoning itself is purely a legislative function and is not within the authority of a board of zoning appeals. *Prince William County Bd. of Zoning Appeals v. Bond*, 225 Va. 177, 181, 300 S.E.2d 781, 783 (1983). Thus, when deciding *appeals* of decisions made by administrative officers or zoning administrators in the enforcement of a zoning ordinance, members of a board of zoning appeals, in essence, sit as judges in

determining the issues presented to them on appeal. It is in this capacity that landowners and the representatives of the citizens who disagree with decisions made by an administrative officer or zoning administrator must present these appeals to a board of zoning appeals. Only after their case has been decided by such boards can landowners or the elected representatives of the citizens access the courts of this Commonwealth. *Lilly v. Caroline County*, 259 Va. 291, 526 S.E.2d 743 (2000).

It cannot be seriously questioned that, for the citizenry to retain faith in the rule of law and the role of the judicial branch of government in our democracy, all citizens need to be confident that, when they appear before a tribunal to present their legal disputes, they will appear before men and women whose overriding purpose is to assure a fair hearing for the parties involved and to decide the issues before them based solely on the evidence presented and the controlling legal principles. People serving in the role of judges, therefore, cannot concurrently be actual, or even perceived, parties to disputes which have been presented to them, for any appearance of subjectivity on the part of our tribunals, or their members, will surely erode confidence in our system of justice.

Further, our judicial system provides rights of appeal so that errors made by judges or other decision makers can be corrected and appellate courts can establish the guiding principles that lesser tribunals must follow in making their decisions. No tribunal, therefore, should ever conduct itself in a manner where the upholding of its decisions through any legal means available becomes of greater importance than the creation of a coherent and comprehensive body of law on a subject the tribunal is empowered to adjudge; and, no tribunal should ever attempt to usurp the roles of the actual litigants involved in a dispute that is or was before it, because such a course of action is entirely inconsistent with the role of the judiciary in our system of justice. I have reluctantly concluded, however, that the FBZA has temporarily lost its compass on these crucial principles and that the resulting dispute which has arisen between the FBZA and the Board of Supervisors of Fairfax County threatens to impede the uniform enforcement of the Fairfax County zoning ordinance, and, even more dangerously, threatens to undermine the confidence of the citizens of this county in the impartiality of its judicial decision makers. This is particularly troubling to me because the dedicated men and women of our Board of Supervisors and our Board of Zoning Appeals take similar oaths and are empowered to serve the common interests of the same citizenry.

Yet, there may in fact be times when the County and the FBZA will differ on the scope of and interpretation of the Fairfax zoning ordinance. At all such times, the FBZA must independently speak, by means of its decisions; however,

the FBZA should never[2] take on the role of a full-fledged litigant in subsequent appeals to the circuit court or the Supreme Court, solely to defend its decision on grounds that bear no relationship to the proper enforcement of the Fairfax zoning ordinance. This is especially true when the actual landowners in the case are represented by experienced and able counsel. This course of action, in my view, is regrettable, and, if allowed to continue, will eventually present real dangers to the administration of justice in Fairfax County.

The actual dispute between the parties in this matter arose out of a determination made by an official of the Fairfax County Department of Public Works that the Lees' property in Fairfax County consisted of one buildable lot, rather than three, as argued by the Lees' able counsel, William Baskin. The Lees appealed that decision to the FBZA where the principal dispute concerned whether the Fairfax County Subdivision Ordinance or the Fairfax County Zoning Ordinance governed the dispute and whether the dispute was a proper subject for an appeal to the FBZA at all. By letter of August 29, 2003, Margaret Stehman, Deputy Zoning Administrator for Appeals to the FBZA, opined that the subdivision ordinance, not the zoning ordinance applied and that the appeal to the FBZA was not proper. The members of the FBZA disagreed and decided on January 20, 2004, that the Lees had the right to undertake construction on three buildable lots.

There is no dispute that the longstanding and consistent practice of the FBZA was to have its clerk render a "final decision" in writing sometime after the actual vote at the Board's meeting. Indeed, Article VII(8) of the FBZA's own by-laws read:

> Within five (5) days of the action of the Board, the Clerk shall prepare and provide to the applicant the Board's decision or *final resolution setting forth the decision* on the application.

(Emphasis added.) Consistent therewith, the first page of the staff report presented to the FBZA on the Lees' application contained the following statement:

> The Board of Zoning Appeals' decision does not become final until the day following the next official meeting day of the BZA, but not less than eight (8) days, whichever is the later, unless the

---

[2] As it has done here and apparently in other cases as well, see e.g. the County's Petition for Rehearing, pp. 6-7, in *West Lewinsville*, Supreme Court Record Nos. 042274 and 042326.

BZA waives this requirement. A copy of this letter from the Clerk to the BZA setting forth this decision will be mailed within five (5) days after the decision *becomes final.*

(Emphasis added.)

The importance of the date the decision of the FBZA became a "final decision" was well known to the FBZA, the County, and the Lees. Pursuant to Va. Code § 15.2-2314, any person aggrieved by a decision of a board of zoning appeals has thirty days from the date of the board's final decision to file a Petition for Writ of Certiorari to a circuit court, appealing the board's final decision. Here, the County filed its petition in the Circuit Court on March 12, 2004, twenty-nine days after the clerk's February 11, 2004, letter but more than thirty days after the FBZA's vote on January 20, 2004.

In response to the County's petition, the Lees, through their counsel, filed responsive pleadings. Even though both parties to the dispute were represented in the Circuit Court by counsel, Brian McCormack, on behalf of the FBZA, filed a demurrer and a plea in bar to the County's petition, seeking the dismissal of the petition on grounds other than the substance of the FBZA's determination that the zoning ordinance, not the subdivision ordinance, governed the dispute between the Lees and the County. In the FBZA's plea in bar, McCormack asserted that, even though it might have long been the understanding of all litigants before the FBZA that its decisions would not be final until the clerk's letter setting out its final decision was forwarded to the applicant, a 2001 amendment to Va. Code § 15.2-2314 had rendered the directions on the staff report, the FBZA's own by-laws, and the clerk's "final decision" letter of no effect. Reduced to its bare essence, counsel for the FBZA, the tribunal on the Lees' application, was asserting that the tribunal could advise litigants before it of the appropriate procedures for appealing an adverse determination by the FBZA and then inject itself in subsequent appellate proceedings in the Circuit Court to attempt to defeat any such appeal, not based upon the merits of the FBZA's decision, but rather on the ground that the party had lost its appellate rights because it had strictly followed the ground rules for appeals that the FBZA had established in that particular case and had adhered to for years before.

I am not unmindful that, in *West Lewinsville Heights Citizens Ass'n v. Board of Supervisors,* 270 Va. 259, 618 S.E.2d 311 (2005), the Supreme Court of Virginia held that the thirty day period for the initiation of an appeal commenced on the date of the FBZA vote, not the date of the clerk's letter. The Supreme Court did not address, however, either the propriety or the wisdom of the FBZA taking such a position in litigation where both parties to

the real dispute were represented by counsel. In fact, since its decision in *West Lewinsville*, the Supreme Court has held that the requirement of the filing of a Petition for Writ of Certiorari in a circuit court within thirty days of the final decision of a board of zoning appeals is not jurisdictional and can be waived by a party. *Board of Supervisors v. Board of Zoning Appeals*, 271 Va. 336, 626 S.E.2d 374 (2006).

Nor, in my opinion, does it matter that the County, and not the individual landowners, had its appeal dismissed as a result of following the FBZA's own procedures because the Board of Supervisors represents each of the individual citizens of Fairfax County, including the Lees, and, if the FBZA could take such a position against the County in this case, solely to avoid the possibility that this court or the Supreme Court might overturn the FBZA's decision, there is simply no impediment to the FBZA utilizing such strategies against individual landowners in future cases.

In this case, the County moved to nonsuit its appeal after the Supreme Court rendered its decision in *West Lewinsville*. The Lees objected to the nonsuit, but, once again, it was counsel for the FBZA who took the lead in briefing and arguing against the nonsuit. Moreover, when I granted the County's motion to nonsuit, it was solely the response of counsel for the FBZA to move for reconsideration of my ruling. To the contrary, Mr. Baskin's response to the memoranda filed by the FBZA and the County was a brief two paragraph letter which was aptly summarized in the first sentence of the second paragraph:

> While the legal jousting over the availability and effect of a nonsuit is intellectually stimulating from a theoretical standpoint, the fact remains that the Petitioners filed their Petition beyond the time period permitted by statute, whether that statute is a statute of limitation or not.

Thus, the FBZA, in its final salvo in this case – at least at the trial court level – asks this court to sustain the FBZA's position on a totally procedural issue that has nothing to do with the FBZA's statutory responsibility to assure uniform enforcement of the Fairfax County Zoning Ordinance. This final request by the FBZA is unfortunately entirely consistent with its position on virtually all other issues in this case, and, in my opinion, is not at all in accord with what the General Assembly envisioned when it set forth the powers and duties of such boards in Va. Code § 15.2-2309, and, even more importantly, is entirely contrary to the proper role of a tribunal in the American system of justice. The motion for reconsideration is denied.